**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **ELLANSALABS INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **Case No. 3:23-cv-585** |
| **v.** | § | |
| | § | **Jury Trial Demand** |
| **ORLANDO ALTAMAR,** | § | |
| **TONI ALTAMAR, and** | § | |
| **ALTAMAR DIAMONDS LLC** | § | |
| | § | |
| **Defendants.** | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff EllansaLabs Inc., formerly named Tesoro International Corp. ("EllansaLabs" or the "Company"), acting by and through its undersigned counsel, files this Complaint against Defendants, and for causes of action would respectfully show as follows:

## NATURE OF THE ACTION

1.      This is an action for breach of contract and trade secrets misappropriation.  The lawsuit arises out of Defendant Orlando Altamar ("Orlando"), a former officer and director of EllansaLabs, and his wife Defendant Toni Altamar ("Toni'), acting through their company Altamar Diamonds LLC, breaching their contractual obligations to the Company. In violation of his Severance Agreement, Orlando failed to return EllansaLabs' laptop upon separation of employment, and transferred to himself and retained a .PST file containing all his EllansaLabs emails with EllansaLabs' confidential information and trade secrets, which resulted in EllansaLabs having no access to these emails. Toni, through Altamar Diamonds LLC, bid on the creation and sale of jewelry valued at $35,000 for an EllansaLabs customer, has communicated with that customer regarding same, and has deprived EllansaLabs of that sale, in violation of the Severance

Agreement to which she is also a signatory. Defendant Orlando also misappropriated EllansaLabs'

confidential and trade secret information in violation of his legal duties to the Company.

## PARTIES

2.      Plaintiff EllansaLabs is a Delaware corporation with a principal place of business

located at 16479 Dallas Parkway, Suite 802, Addison, Texas 75001.

3.      Defendant Orlando is a former employee, officer, and director of EllansaLabs.

Upon information and belief, Orlando is a citizen of Texas, residing at 2637 Elmbrook Dr.,

Carrollton, TX 75010.

4.      Defendant Toni is Orlando's wife.  Upon information and belief, Toni is a citizen

of Texas, residing at 2637 Elmbrook Dr., Carrollton, TX 75010.

5.      Defendant Altamar Diamonds LLC is a Texas limited liability company, whose

registered agent is located at 5511 Parkcrest Drive, Suite 103, Austin, TX 78731. Upon

information and belief, Orlando and Toni are the sole members of Altamar Diamonds LLC.

## JURISDICTION AND VENUE

6.      This is a suit for trade secret misappropriation under the Defend Trade Secrets Act

(the "DTSA"), 18 U.S.C. § 1836 *et seq.*, the Texas Uniform Trade Secrets Act, Tex. Civ. Prac. &

Rem. Code § 134.001A *et seq.*, and other related Texas common law and statutory claims.  This

Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

7.      The Court has supplemental jurisdiction over EllansaLabs' state law claims under

28 U.S.C. § 1367(a) because these claims are directly related to the claims in this action within

this Court's original jurisdiction and intertwined with the same case or controversy.  EllansaLabs'

common law claims are substantially related to EllansaLabs' claims over which this Court has

original jurisdiction.

8.      This Court has personal jurisdiction over Orlando and Toni as they both reside in Texas, and breached their statutory, contractual, and common law duties in Texas.  The Court also has personal jurisdiction over Orlando and Toni because in the agreement at issue they agreed to the jurisdiction of a court in Texas. The Court also has personal jurisdiction over Altamar Diamonds LLC because it is a Texas limited liability company, and upon information and belief, its sole members are residents of Texas.

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to EllansaLabs' claims occurred in this District.

## FACTUAL BACKGROUND

### EllansaLabs' Business.

10.      One of EllansaLabs' lines of business is the marketing and selling of custom fine jewelry to customers via an internet-based model utilizing digital inventory.  EllansaLabs' services include, among other things, jewelry design, eCommerce platform integration, on-demand jewelry manufacturing, quality control, and end-customer fulfillment and support.

11.      EllansaLabs has developed certain proprietary, confidential and trade secret information related to its business and the needs of its customers.  This information is essential to EllansaLabs' continuing success.

12.      EllansaLabs has expended a substantial amount of time, money, and effort in developing its confidential and trade secret information.

13.      EllansaLabs protects the secrecy of its confidential and trade secret information by, among other things, requiring password and two-factor authentication protection of EllansaLabs' computers that have access to or contain such information; password protecting EllansaLabs'

databases that contain such information; allowing access to it only to a restricted number of

EllansaLabs employees with a specific need to know such information in order to perform their

job functions and who have an obligation to keep the information confidential; maintaining

policies with respect to the use and dissemination of such information; and restricting physical

access to EllansaLabs' offices, IT systems, and facilities.

### Orlando's Duties at EllansaLabs and His Access to EllansaLabs' Confidential and Trade Secret Information.

14.     On October 20, 2021, EllansaLabs entered into an Employment Agreement with

Orlando, and Orlando became President of the Company. An executed copy of the Employment

Agreement is attached hereto as **Exhibit A.**

15.     Orlando also served as Chief Executive Officer and one of four directors on the

Board of Directors for the Company.

16.     Orlando's position with EllansaLabs was significant, and he was a critical

employee of EllansaLabs.

17.     In his position, Orlando had general executive operating supervision of the

Company.

18.     As a result of his high-level position with the Company, Orlando was intimately

familiar with EllansaLabs' confidential and/or trade secret information including, but not limited

to, financial data regarding volumes of business and profitability of the Company, business

strategies, financial or business projections, master files (providing average costs per unit, current

costs per unit, and highest costs per unit), existing bids on all projects, bid sheets, actual job

performance and budget plans, pricing and margins per customer, customer and vendor contact

information, new technologies under development, new software, and other confidential

information pertaining to valuable, special, or unique aspects of EllansaLabs' business activities.

19.     As part of his job duties, Orlando also led confidential meetings, where EllansaLabs' business strategies were discussed and created.

20.     The information to which Orlando had access as part of his job at EllansaLabs constitutes commercially valuable information, is the subject of EllansaLabs' efforts to maintain secrecy or confidentiality, and is not reasonably ascertainable through lawful means.

21.     Orlando would have been denied intimate access to EllansaLabs' highly confidential, competitively sensitive information but for his position of trust and confidence with EllansaLabs.  Only those people in a need-to-know position at EllansaLabs are given access to such information.

22.     Orlando was a highly compensated employee at EllansaLabs.

23.     Due to the critical position of Orlando and to further protect the Company's confidential business information, business relationship with the clients, and goodwill, Orlando's Employment Agreement also required Orlando to protect, and not use or disclose any of EllansaLabs' "Confidential Information."  Exh. A, Sec. 9.

24.     Under Section 10 of the Employment Agreement, Orlando agreed to reasonably limited noncompetition and non-solicitation restrictions that are ancillary to or part of an otherwise enforceable agreement.

25.     Orlando purchased a new laptop on January 20, 2021 and received an expense reimbursement from EllansaLabs for the purchase on January 24, 2021.

**Orlando resigned from EllansaLabs to start a competing business with Toni called Altamar Diamonds LLC.**

26.     Orlando's employment with EllansaLabs ended on May 31, 2022.

27.     Orlando intended to operate a competing business called Altamar Diamonds LLC with his wife Toni.

28.     EllansaLabs and Orlando entered into a Severance Agreement, with regard to which Orlando was represented by counsel, that modified Orlando's Employment Agreement to allow Orlando to resign rather than be terminated for Cause, and allow him and Toni to operate Altamar Diamonds LLC. An executed copy of the Severance Agreement is attached hereto as **Exhibit B**.

29.     Under the terms of the Severance Agreement, Orlando agreed to return all of EllansaLabs' property, except certain designs Orlando would take with him. Other than the designs, Orlando agreed to return, among other things, all equipment and stored data, and agreed not to make any copies. Exh. B, Sec. 3(h).

30.     Toni was also a party to the Severance Agreement. Both Toni and Orlando agreed not to take any actions to violate Orlando's Employment Agreement.  Exh. B, Sec. 3.

31.     However, Section 3 of the Severance Agreement permitted Toni and Orlando to engage in certain limited competitive actions through Altamar Diamonds LLC:

(a) Altamar and Toni, acting as Altamar Diamonds LLC, may sell products and services directly to retail consumers without restriction;
(b) Altamar and Toni, acting through Altamar Diamonds LLC, may work with Amanda Latona, and entities she owns or manages, and such work shall not by itself violate the Employment Agreement;, [sic] provided Altamar otherwise complies with the Employment Agreement.
(c) Altamar and Toni, acting through Altamar Diamonds LLC, may work with the manufacturers identified below (including their successors or assigns), and such work shall not by itself violate the Employment Agreement provided Altamar otherwise complies with the Employment Agreement:
    (i) Roseco
    (ii) Vijay Mulani
    (iii) Griffins Jewelers
    (iv) Brian Howard
    (v) Kim International

32.     In exchange for Orlando's and Toni's execution of the Severance Agreement and adherence to their obligations in the Severance Agreement, EllansaLabs agreed, among other things, to characterize Orlando's departure as a resignation rather than a termination for Cause, waive its right to deny Severance Payments under the Employment Agreement, and pay Orlando

Severance Payments under the Employment Agreement plus an additional $10,000.00. Exh. B, Sec. 2.

33.    EllansaLabs performed its obligations under the Severance Agreement.

**EllansaLabs Discovers that Orlando Misappropriated EllansaLabs' Information.**

34.    On November 9, 2022, Chief Financial Officer Barry Boland requested that Nathan Kanelis of N.K. Computer Solutions, LLC—EllansaLabs' IT support service vendor—provide access to Orlando's EllansaLabs' emails because Mr. Boland needed access to run the business.

35.    Mr. Kanelis responded he could not provide access because around the time of Orlando's separation from EllansaLabs, Orlando had instructed Mr. Kanelis to migrate a .PST file containing all of Orlando's EllansaLabs' emails to Orlando. Orlando could then access the emails on the laptop through the Outlook application. None of Orlando's emails while working for EllansaLabs remained on EllansaLabs' email server after the transfer.

36.    Because the .PST file contains the entirety of Orlando's emails while working for EllansaLabs, Orlando is in exclusive possession of vast amounts of highly confidential business information and trade secrets belonging to EllansaLabs, and EllansaLabs has no access to this information or its extent.

37.    Access to such confidential information is a windfall to a competitor, like Orlando, Toni, and their new business Altamar Diamonds LLC, providing them with a large and unfair competitive advantage regarding EllansaLabs' customers and services.

38.    Upon information and belief, Orlando removed the .PST file to use and/or disclose them for his and Toni's benefit in their new business Altamar Diamonds LLC.

39.    The full extent of EllansaLabs' trade secrets and confidential information misappropriated by Orlando is not yet fully known as EllansaLabs' investigation continues.

**EllansaLabs discovers Toni competed against EllansaLabs.**

40.     After executing the Severance Agreement, Toni bid on the creation and sale of jewelry valued at $35,000 for an EllansaLabs customer, has communicated with that customer regarding same, and has deprived EllansaLabs of that sale, all in violation of the Severance Agreement.

**EllansaLabs attempted to recover its property.**

41.     On November 21, 2022, counsel for EllansaLabs sent a letter to Mr. Andrew Fisher, an attorney who represented Orlando during the negotiations of the Severance Agreement, demanding that all evidence related to transfer, use, disclosure or access of EllansaLabs emails and documents be preserved.

42.     On November 29, 2022, Mr. Fisher responded he no longer represented Orlando.

43.     On November 30, 2022, counsel for EllansaLabs sent an email to Orlando demanding preservation as well as return of the laptop, including the .PST file.

44.     In that same email, counsel for EllansaLabs notified Orlando that EllansaLabs was aware of Toni's breach of the Severance Agreement in bidding against EllansaLabs to supply jewelry to a customer.

45.     On January 23, 2023, attorney James Walker notified counsel for EllansaLabs that he represented Orlando.

46.     After subsequent communications, the Parties agreed to have the laptop hard drive imaged and preserved through a third-party vendor, with such imaging and preservation occurring on or about February 17, 2023.

47.     On February 23, 2023, EllansaLabs received a report regarding Orlando's access of the .PST file, which established that Orlando had repeatedly accessed the .PST file after he

transferred it to himself and in some cases after executing the Severance Agreement, including as

recently as January 4, 2023, despite his affirmations in the Severance Agreement that he would

not retain, copy, or transfer any of EllansaLabs' property.

## FIRST CAUSE OF ACTION
### *(Breach of Section 3(h) of the Severance Agreement)*
### (against Orlando)

48.     EllansaLabs incorporates by reference its allegations above as if fully re-written.

49.     A valid, enforceable agreement exists between EllansaLabs and Orlando containing

certain obligations that Orlando promised to comply with in exchange for consideration.

50.     EllansaLabs has performed its contractual obligations under the Severance

Agreement.

51.     Under Section 3(h) of the Severance Agreement, Orlando agreed to return and not

transfer, retain, or make any copies of all documents and property belonging to EllansaLabs at

the time of termination, except Orlando was allowed to retain certain designs per Section 3(i).

52.     Orlando has breached the Severance Agreement by, as set forth in this Complaint,

failing to return the laptop and transferring to himself and retaining the .PST file.

53.     As a result of Orlando's actions, EllansaLabs has been damaged in the amount to

be determined at trial.

## SECOND CAUSE OF ACTION
### *(Breach of Section 3(j) of the Severance Agreement)*
### (against Orlando)

54.     EllansaLabs incorporates by reference its allegations above as if fully re-written.

55.     A valid, enforceable agreement exists between EllansaLabs and Orlando containing

certain obligations that Orlando promised to comply with in exchange for consideration.

56.     EllansaLabs has performed its contractual obligations under the Severance Agreement.

57.     Under Section 9(a) of the Employment Agreement, Orlando agreed not to use, disclose, or make copies of EllansaLabs' confidential information, except as modified by Section 3(j) of the Severance Agreement, which allowed Orlando to use or disclose confidential information after two years from his termination.

58.     Orlando has repeatedly accessed the .PST file containing EllansaLabs' confidential information before the expiration of the two-year period.

59.     Upon information and belief, Orlando violated the Severance Agreement when he used and/or disclosed EllansaLabs' confidential information before the expiration of the two-year period by accessing the .PST file that contains EllansaLabs' confidential information.

60.     As a result of Orlando's actions, EllansaLabs has been damaged in the amount to be determined at trial.

### THIRD CAUSE OF ACTION
*(Breach of Section 3(l) of the Severance Agreement)*
**(against Orlando)**

61.     EllansaLabs incorporates by reference its allegations above as if fully re-written.

62.     A valid, enforceable agreement exists between EllansaLabs and Orlando containing certain obligations that Orlando promised to comply with in exchange for consideration.

63.     EllansaLabs has performed its contractual obligations under the Severance Agreement.

64.     Under Section 3(l) of the Severance Agreement, Orlando agreed not to use or disclose EllansaLabs' trade secrets.

65.     Orlando has repeatedly accessed the .PST file containing EllansaLabs' trade secrets.

66.     Upon information and belief, Orlando breached the Severance Agreement by using and/or disclosing EllansaLabs' trade secrets by accessing the .PST file that contains EllansaLabs' trade secrets.

67.     As a result of Orlando's actions, EllansaLabs has been damaged in the amount to be determined at trial.

**FOURTH CAUSE OF ACTION**
*(Breach of Section 3 of the Severance Agreement)*
**(against Toni and Altamar Diamonds LLC)**

68.     EllansaLabs incorporates by reference its allegations above as if fully re-written.

69.     A valid, enforceable agreement exists between EllansaLabs and Toni containing certain obligations that Toni, acting as or through Altamar Diamonds LLC, promised to comply with in exchange for consideration.

70.     EllansaLabs has performed its contractual obligations under the Severance Agreement.

71.     Under Section 3 of the Severance Agreement, Toni agreed not to "work on [her] own or with or through Altamar Diamonds LLC or any other entity to violate or evade the terms of the Employment Agreement."

72.     Toni breached Section 3 of the Severance Agreement by, as set forth in this Complaint, bidding against EllansaLabs to supply jewelry to a customer, within twenty-four months after termination of Orlando's employment with EllansaLabs.

73.     As a result of Toni's actions as or through Altamar Diamonds LLC, EllansaLabs has been damaged in the amount to be determined at trial.

**FIFTH CAUSE OF ACTION**
*(Trade Secret Misappropriation Under the Defend Trade Secrets Act)*
**(against Orlando)**

74.     EllansaLabs incorporates by reference its allegations above as if fully re-written.

75.     EllansaLabs is the owner of valuable trade secrets related to products and services used in, or intended for use in, interstate or foreign commerce.  Such information includes but is not limited to the information contained in the .PST file.

76.     The information that Orlando misappropriated from EllansaLabs, including, but not limited to, information contained in the .PST file, is a "trade secret" as this term is defined under 18 U.S.C. § 1839(3).

77.     EllansaLabs took affirmative steps to maintain the confidentiality of such information, which were reasonable under the circumstances.

78.     The information that Orlando misappropriated from EllansaLabs, including, but not limited to, information contained in the .PST file, derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

79.     EllansaLabs derives great value from the fact that this information is not readily ascertainable by others, particularly competitors. The information provides a significant competitive advantage.

80.     Orlando misappropriated EllansaLabs' trade secrets by: 1) acquiring them through improper means, including, but not limited to, failing to return EllansaLabs' trade secrets, theft, and/or breach of a duty to maintain secrecy of EllansaLabs' trade secrets; and 2) disclosing or using EllansaLabs' trade secrets without express or implied consent of EllansaLabs.

81.    Orlando's misappropriation of EllansaLabs' trade secrets and proprietary information constitutes a violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836(b)(1).

82.    EllansaLabs has been and is being damaged by Orlando's misappropriation of its trade secrets.  The damage to EllansaLabs may include, but is not limited to, loss of information, loss of the secrecy of the information, lost customers, potential lost business opportunities, loss of employees and potential employees, and a disadvantaged market position.  These and other damages suffered by EllansaLabs are irreparable.

83.    EllansaLabs is entitled to an award of damages in the amount of EllansaLabs' actual losses and Orlando's unjust enrichment, including attorneys' fees and costs.

84.    Orlando's duplicitous activities to misappropriate EllansaLabs' trade secrets constitute willful and malicious conduct warranting an award of exemplary damages.

## SIXTH CAUSE OF ACTION
### *(Trade Secret Misappropriation Under the Texas Uniform Trade Secrets Act)*
### (against Orlando)

85.    EllansaLabs realleges and incorporates all previous paragraphs of the Complaint as if fully set forth here.

86.    The information that Orlando misappropriated from EllansaLabs, including, but not limited to, information contained in the .PST file, derives independent economic value for EllansaLabs, actual or potential, from not being generally known to, and not being readily ascertainable by proper means, by other persons who can obtain economic value from its disclosure or use.

87.    The information that Orlando misappropriated from EllansaLabs, including, but not limited to, information contained in the .PST file, constitutes trade secrets as that term is defined under the Texas Uniform Trade Secret Act, Tex. Civ. Prac. and Rem. Code § 134A.002(6).

88.     EllansaLabs took affirmative steps to maintain the confidentiality of such information, which were reasonable under the circumstances.

89.     Orlando misappropriated EllansaLabs' trade secrets by: 1) acquiring them through improper means, including, but not limited to, theft and breach of a duty to maintain secrecy of EllansaLabs' trade secrets; and 2) disclosing or using EllansaLabs' trade secrets without express or implied consent of EllansaLabs.

90.     The conduct of Orlando was duplicitous and motivated by his intent to serve his own personal benefit and not the benefit of EllansaLabs and sought to profit from his use or disclosure of EllansaLabs' trade secrets.

91.     As a proximate result of his actions, Orlando has reaped the benefits due to EllansaLabs and has been unjustly enriched.

92.     Orlando is directly liable for trade secret violations under Texas law.

93.     EllansaLabs has been and is being damaged by Orlando's misappropriation of its trade secrets. The damage to EllansaLabs may include, but is not limited to, loss of information, loss of the secrecy of the information, lost customers, potential lost business opportunities, loss of employees and potential employees, and a disadvantaged market position. These and other damages suffered by EllansaLabs are irreparable.

94.     EllansaLabs is entitled to compensatory damages in an amount to be determined at trial. In light of the willfulness and maliciousness of the conduct of Orlando, EllansaLabs is entitled to exemplary damages and its attorneys' fees pursuant to applicable law.

## **PRAYER FOR RELIEF**

WHEREFORE, EllansaLabs requests that this Court enter judgment against the Defendants awarding:

A.      judgment against the Defendants for monetary damages;

B.      judgment in EllansaLabs' favor against the Defendants on all causes of action alleged in the Complaint;

C.      accounting and return of all documents and information removed/misappropriated by Orlando;

D.      accounting and return of all compensation, profits, monies, accruals, increments or other benefits derived or received by Toni and Altamar Diamonds LLC as a result of any transactions constituting a breach of any of the provisions of the Severance Agreement;

E.      exemplary and punitive damages;

F.      attorneys' fees and costs; and

G.      such other relief as the Court may deem just and equitable.

Plaintiff requests a trial by jury on all matters and issues properly tried to a jury pursuant to Federal Rules of Civil Procedure 38 and 39, and other applicable federal and state law.

Dated this 16th day of March, 2023.        Respectfully Submitted,

**JACKSON WALKER LLP**


By:  */s/ Cody Martinez*


ATTORNEYS FOR PLAINTIFF ELLANSALABS, INC.


Arthur Gollwitzer III
TX SBN 24073336
*agollwitzer@jw.com*
JACKSON WALKER LLP
100 Congress Avenue, Suite 1100
Austin, TX 78701
T. 512.236.2268
F. 512.236.2002

Cody Martinez
TX SBN 24102146
*cmartinez@jw.com*
JACKSON WALKER LLP
2323 Ross Avenue, Suite 600
Dallas, TX 75201
T. 214.953.6149
F. 214.953.5822

Eric A. Johnston
TX SBN 24070009
*eric.johnston@michaelbest.com*
Lance A. Hevizy
TX SBN 24032418
*lahevizy@michaelbest.com*
MICHAEL BEST & FRIEDRICH LLP
620 Congress Avenue, Suite 200
Austin, TX 78701
T. 512.320.0601
F. 512.640.3170

Eric H. Rumbaugh[1], Attorney-in-Charge
WI SBN 1015164
*ehrumbaugh@michaelbest.com*
Victor J. Allen[2]
WI SBN 1081361
*vjallen@michaelbest.com*
MICHAEL BEST & FRIEDRICH LLP
790 N. Water Street, Suite 2500
Milwaukee, WI  53202
T. 414.271.6560
F. 414.277.0656

Y. Angela Lam[3]
IL SBN 6326204
*yalam@michaelbest.com*
MICHAEL BEST & FRIEDRICH LLP
444 W. Lake Street, Suite 3200
Chicago, IL 60606
T. 312.222.0800
F. 312.222.0818

---

[1] Motion for Admission Pro Hac Vice is forthcoming.
[2] Motion for Admission Pro Hac Vice is forthcoming.
[3] Motion for Admission Pro Hac Vice is forthcoming.